UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                                          CRIMINAL ACTION NO. 3:21-CR-63-RGJ

CORY EVANS                                                                                    DEFENDANT

**SENTENCING MEMORANDUM**
*ELECTRONICALLY FILED*

Comes the Defendant, Cory Evans ("Cory"), by and through counsel, Brian Butler, and hereby submits the following sentencing memorandum in support of a sentence of three (3) years of probation with a special condition of one (1) year of home detention:

Cory pled guilty to one count of deprivation of rights under the color of law in violation of 18 U.S.C. § 242. Specifically, Cory pled guilty to striking M.C. with a baton as he was surrendering to law enforcement during the riots.

The Presentence Investigation Report ("PSI") calculates Cory's United States Sentencing Guideline ("Guidelines") range at 51-63 months. The parties entered into a Rule 11(c)(1)(C) agreement that sets an under range limit at 48 months but permits Cory to argue for any sentence he believes is appropriate under the circumstances.

Based upon the application of the factors in 18 U.S.C. § 3553(a) and Guideline §§ 5H1.11(military service) and 5H1.3 (mental and emotional condition), the undersigned respectfully requests the Court sentence Cory to three (3) years of probation with a special condition of one (1) year of home detention.

1

## GUIDELINES

A.   <u>Obstruction of Justice Enhancement does not apply.</u>

The PSI did not include an enhancement for alleged obstruction of justice. The Government has objected to United States Probation's decision not to include an obstruction of justice enhancement. By email, the Government advised that they intend to call Sergeant William Keeling, Officer Joe Berg and Officer Matthew Gammons as witnesses. It is anticipated that Sergeant Keeling would testify that Cory told him that M.C. sustained his injury by falling off a fence rather than by Cory striking him once with a baton. Witness testimony is unnecessary as it is undisputed that Sergeant Keeling was inquiring about M.C.'s injury in order to complete a standard Louisville Metro Police use of force report and before the initiation of the federal investigation. Simply put, Officer Keeling was not conducting a criminal investigation and he is not a Public Integrity investigator.

Cory's alleged false statement occurred prior to the initiation of the criminal investigation as part of a routine administrative process and, as such, the alleged false statement does not justify an obstruction of justice enhancement. *See United States v. Bazapour*, 690 F.3d 796, 807 (6th Cir. 2012), *United States v. Baggett*, 342 F.3d 536 (6th Cir. 2003) and *United States v. Benson*, 79 Fed.Appx. 813, 827 (6th Cir. 2003). As stated in the Government's objection, the federal criminal investigation did not begin until M.C. made an official complaint. As such, the Government's objection to the PSI should be denied.

B.   <u>Military Service pursuant to Guideline § 5H1.11</u>

Cory enlisted in the United States Army and completed basic training while in high school. Cory served both on active duty and as a member of the National Guard. Cory was

assigned to the United States Army's 19th Special Forces Group and deployed to Afghanistan on two occasions including a combat deployment. Subsequently, Cory transitioned to a combat engineer position. Cory's records from the Department of Veterans Affairs indicate Cory experienced the following events during his deployment:

> *Blast or Explosion IED (improvised explosive device)
>
> *RPG (rocked propelled grenade)
>
> *Land Mine
>
> *Grenade, etc.

*Exh. 1.*

Cory earned two Army Commendation Medals, three Army Achievement Medals, a Parachutist Badge, a Global War on Terrorism Ribbon, an Afghanistan Campaign Medal and a host of other medals and badges. Through dedication and success, he has risen to the rank of E-6. He currently serves as a military paralegal in his reserve unit. All told, Cory has over sixteen (16) years of military service.[1]

Cory's service to his country has left him with two bad knees, a bad back, an anxiety disorder, a mood and/or depressive disorder and likely post-traumatic stress disorder. Because of this incident, he will lose a military pension that he has undoubtedly earned by service to the United States. Sadly, he was not given the opportunity to attend and complete veterans court in order to possibly finish his military career.

Cory's military service is exemplary. His service warrants a substantial departure pursuant to Guideline § 5H1.11.

---

[1] Twenty (20) years is necessary for retirement and this situation has destroyed his military career as the United

3

C. <u>Mental and Emotional Conditions pursuant to Guideline § 5H1.3</u>

Like so many veterans, Cory developed mental health problems following his return from Afghanistan. On June 15, 2011, Cory's records from the Department of Veteran Affairs notes that Cory has "Anxiety, Major Depression and a plethora of sxs [signs and symptoms] that could be thought of as PTSD SXS." The records further note "poor adjustment to not being in combat arena and level of intensity and purpose." *Exh. 2 and Exh. 3*.

Cory's anxiety and depressive issues continued and are documented. In 2018, he was diagnosed with probable adult ADHD as well as a mood disorder. His most recent evaluation this year diagnoses Cory with an "unspecified anxiety disorder," ADHD and an "unspecified trauma and stressor related disorder." *Exh. 4*.

Cory's mental health challenges are at least in part, if not completely, attributable to his military service. Cory states that the first days of the unrest in Louisville were more intense and stressful than even his time with the 19th Special Forces Group in Afghanistan. Without question, Cory's mental health challenges significantly contributed to his split second mistake in striking M.C. one time.

Cory developed his mental health problems serving his country in a war zone in Afghanistan and exasperated by the chaos and violence on the streets of Louisville in the summer of 2020. Cory is currently in a Cognitive Behavior Treatment Program through the Department of Veteran's Affairs. These service related mental health complications warrant a substantial departure pursuant to Guideline § 5H1.3.

---

States Army has no choice but to separate him from service.

## APPLICATION OF 18 U.S.C. § 3553(a)

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply the delineated sentencing considerations.

A.     Nature and Circumstances of the Offense

Cory was a member of the Louisville Metro Police Special Response Team ("SRT") who was tasked with responding to unprecedented and violent riots.   Two days before this incident, Cory responded to a mass riot related shooting where seven people were shot.   Medical personnel were unable to reach the victims for fear of an active shooter and hostile crowds.   Cory placed himself in grave risk of death in order to assist wounded protestors.   Because of his heroism, Cory and a very few other brave officers saved the life of one protestor and possibly others who were shot on the first night of the riots.

Sergeant Joel Casse nominated Cory for the Medal of Valor and the Distinguished Life Saving Award.   Sergeant Casse wrote,

> "You established security for responding units for what was perceived to be a situation involving a possible active shooter from an elevated position.   You were notified of a victim suffering from multiple gunshot wounds to the chest and pelvic area.   The hostile crowd prevented EMS from reaching the victim therefore he could not receive life-saving care.   You made a quick assessment and loaded the victim into the back of the armored vehicle where paramedic, Kyle Simpson, was waiting to provide medical support…. You also continued to secure the chaotic scene without the protection of the armored vehicle and under the perceived threat to active shooter gunfire while Paramedic Chesser remained on the scene to provide additional medical support.   Because of your tactics and safe control of the situation, six other victims with gunshot wounds received on-site medical treatment.   **Undoubtedly, the transported victim's life was saved and possibly the lives of other gunshot victims**." …
> I commend you for your exceptional work ethic and for your **acts of heroism that put you in extreme danger in order to save a person's life."**     [emphasis added].

Louisville Metro Police Detective Charles Heller was a member of the Special Response Team. Like Cory, he attempted to protect our city from rioters. Detective Heller described the scene "as pure chaos. It was like a scene out of a war movie. Thousands of rioters filled the streets. The rioters destroyed everything in their wake. **We were shot at almost every night. Bottles of urine were thrown at us. One of our SRT members was hit with a Molotov Cocktail and set on fire… We had little sleep and had been beat up for 3 days straight. I have heard old veterans talk about the 'fog of war' and now I understand. We were shot at, spit at, verbally and physically accosted, urine thrown on us, bricks and rocks thrown at us, Molotov Cocktails thrown at us, improvised explosive devices thrown at us, loved ones threatened and our city in shambles. We were beyond exhausted, stressed, hungry, thirsty and frustrated with no end in sight."** *Exh. 5.*

On May 31, 2020, the SRT team was attempting to enforce the curfew against rioters who were destroying Louisville. Obviously, this was a perilous mission as two days before multiple people were shot and police lives were in constant danger. On the night in question, police were struck with rocks, bottles, frozen water bottles and other projectiles. Molotov Cocktails and other explosives were also being deployed against them. M.C. appeared to be part of a crowd that was engaged in violent and destructive conduct. M.C. surrendered as police advanced upon him. Cory struck him one time with his baton.

M.C. suffered what his medical records describe as a "minimal contusion." He did not suffer a fracture. At the point of impact, M.C. obtained a 2 cm laceration with "superficial" depth. He did not lose consciousness. He reported decreased hearing in his left ear and

dizziness. It is anticipated any hearing loss or dizziness would have corrected itself in relatively short order after the incident.

Again, Cory should not have struck M.C. It was inappropriate and unnecessary and he accepts full responsibility for his action. But, it is of the utmost importance to put Cory's action in the proper context.

      B.      Personal History and Characteristics

      1.      *Family and Educational History*

Cory grew up in Eastern Kentucky with an alcoholic father. His father was physically, verbally and emotionally abusive. Fortunately, Cory's mother was loving and supportive. She was a school teacher who raised him in the church and instilled strong values in him that kept him away from the devastation caused by drugs in his Eastern Kentucky hometown. Cory was an above-average high school student who also ran track and cross country.

Cory was not willing to fail or fall victim to substance abuse like his father or so many of his classmates. Rather, he dedicated his life to combating the drugs that destroyed his hometown and protecting his country. Cory joined the United States Army when he was seventeen (17) years old. He spent a high school summer completing boot camp. In her letter begging the Court for leniency, Cory's mother wrote, "He has been willing, from a very young age, to be the heroic figure and has spent the past seventeen years of his life putting his life on the line to protect and serve his nation and his community." *Exh. 6.*

Cory has been married to Jenna for seven (7) years. He has two young sons. His wife wrote, "He has always been dedicated to his country, his family and his community. He has worked his entire adult life to make the world a safer and more joyful place. He is a loving man.

He is caring and compassionate. When he returns home from work, he gives his two little boys his attention. He plays with them no matter what happened during his shift, and off duty, he takes them to the park or swimming or reads to them." *Exh. 7.*

Cory is an undoubtedly a devoted father. He adores his two young sons. Karen and Tim Wheeler summed up Cory's importance to his family when they wrote, "This young family needs him so badly at home with his children as they are growing up. A long sentence would risk severing the bonds with his little boys and put Jenna in a very difficult and tenuous position trying to raise and support two boys on her own as a single parent!" *Exh. 8.*

    2.    *Civilian Work History*

Cory began his law enforcement career with the Kentucky Department of Corrections in 2009. Cory became a corrections officer in the hope that he could someday transition to fulfilling his dream of becoming a police officer. Cory worked as a prison guard at both the Roederer Correction Complex and the Kentucky State Reformatory.

In 2014, Cory was hired by the Louisville Metro Police Department. Cory was a very active police officer who made multiple cases and concentrated on taking guns and drugs off of Louisville's streets. Cory chose to work in Louisville's highest crime and most dangerous areas.

He received numerous awards and commendations during his tenure as a police officer. Cory received a Letter of Commendation for saving the life of a female gunshot victim on March 5, 2020. Cory "found what appeared to be an entry wound on her left side, underneath her arm pit. [Cory] continued to perform life-saving measures by applying a chest seal over the wound. Once the seal was secured, the victim slowly began to regain consciousness …" The gunshot victim later made a full recovery. Cory was nominated for the Distinguished Lifesaving Award.

Cory received a Letter of Commendation for substantially assisting in saving the life of a woman who jumped from the rail yard bridge into the river on March 19, 2020. He was nominated for the Exceptional Merit Award.

As previously referenced, Cory was nominated for the Valor Award and the Distinguished Life Savings Award for saving the life of at least one if not several victims of gunshot wounds on May 29, 2020. The incident before the Court occurred a mere two days after Cory literally risked his life to save protesters who had been shot by a rioter. Cory went into law enforcement to help people. He proudly served as a Louisville Metro Police Officer until he resigned in connection with this investigation on June 15, 2021.

Cory quickly found alternative employment to help support his family. He is currently employed with OPS which conducts validation exercises for military special forces. In essence, he participates in role playing exercises to help our special forces train. Even under this cloud, he is doing everything he can to provide for his family and to continue to serve.

3. *Military Service*

*See Subsection B. under the Guidelines portion of this Memorandum.*

4. *Medical/Mental Health History*

As noted in Cory's PSI, he has hearing loss in his right ear. He suffers from back and leg pain. Two vertebrae in his back were broken. All of these injuries were sustained serving his country in the United States Army.

Cory's service related mental health problems are delineated in *Subsection C under the Guidelines portion of this Memorandum.*

Given all that has happened and a recognition of his mental health challenges, Cory has

made peace with the fact that he will never again work in law enforcement or be able to wear a United States Army uniform. He will pursue a career path with significantly less stress and life threatening challenges. Cory and his family may be better off in the long run but, undoubtedly, the community and the country are losing the service of a man who was willing to stand the post in the most dangerous of circumstances.

    5.    *Criminal History*

Cory is a criminal history category I. He has never previously been charged with a crime much less convicted of a crime.

    6.    *Character References*

Jerry Stacy may have summed up the sentiments of all when he wrote, "Cory has a great love of God, his family, his community and his country and has been an asset to all he has served." *Exh. 9.* Cory's character references from fellow soldiers, fellow officers, friends and family reflect a life well lived in the service of his others. Cory's character letters speak to a determination to use his life to defend what should be precious to all of us and a willingness to sacrifice, including risking his own life countless times, to protect his community and his country. While imperfect like we are all imperfect, Cory is undoubtedly a hero.

Shayne Welling, a criminal defense attorney in Wheeling, West Virginia recruited Cory as a paralegal to the Army Engineer Brigade. Mr. Welling described Cory as "among the best Non-Commissioned Officers ever assigned to my section." More importantly, Mr. Welling stated, "Cory embodies the value of selfless service" and "his identity is his commitment to public service." *Exh. 10.*

Frederick Lambing served with Cory in the 2nd Battalion 19th Special Forces Group. Mr.

Lambing wrote, "Cory exemplified the Army's code of loyalty, duty, respect, selfless service, honor, integrity, and personal courage." *Exh. 11*.

Brad Brown described Cory as dedicated to his family and his country. Mr. Brown summarized Cory's essence when he stated, "**Cory has volunteered to put himself in situations most of us cannot imagine.**" [emphasis added]. In words that profoundly resonate, Mr. Brown further stated, **"In troubled and tough times this great nation needs more people like Cory to selflessly stand up to protect his country, his city, and our families."** [emphasis added]. *Exh. 12*. Kristin Milne echoed Mr. Brown's sentiments. Ms. Milne wrote, "In my opinion, his bravery and sacrifice in risking his life exemplifies the epitome of a hero. I can't begin to imagine all of the sacrifices he has made (along with his family) to keep us safe and free." *Exh. 13*.

Louisville Metro Police Officer Christine Beaven worked a police beat with Cory in one of the highest crime areas of Louisville. She described Cory as "one of the bravest persons I know." Officer Beaven recounted Cory's unheralded bravery that saved a woman's life. Officer Beaven and Cory observed a SUV crash into an electric pole causing a substantial fire. Officer Beaven, Cory and the SUV were quickly surrounded by flames. Knowing that the SUV would soon catch fire and the occupant would be burned alive, Cory "jumped onto the driver side doorframe and kicked the door in until it broke and he reached in and pulled her very heavy body out." Officer Beaven opined, "I fully believe if Cory hadn't been there she would have perished." *Exh. 14*.

Reverend William Frisby has known Cory for 20 years in the role of his family minister. Reverend Frisby wrote, "I have watched him excel at school, excel in the military, excel as a

family member." Reverend Frisby also noted his numerous volunteer hours at the church. *Exh. 15.*

The collection of character letters describe an incredibly dedicated father and family man. They describe an individual dedicated to serving his community and his country. They describe a hero. *Exh. 16.*

C. <u>Need for the Sentence Imposed.</u>

A three (3) year probated sentence with a special condition of one (1) year of home detention is sufficient but not greater than necessary to accomplish the sentencing goals. Our suggested sentence reflects the seriousness of the offense but also takes into account the unique circumstances of this case.

Cory has never previously committed an offense and no one believes he will ever commit a future offense. Cory has been convicted of a felony offense and well never work in law enforcement again.

Cory began working in law enforcement with the Kentucky Department of Corrections in 2009. He worked with the Department of Corrections until he was hired by the Louisville Metro Police Department in 2014. Cory resigned from the Louisville Metro Police Department on June 15, 2021 because of this situation. He was a mere eight (8) years away from earning a law enforcement retirement. His law enforcement retirement is gone because of this incident.

Even more tragically, Cory enlisted in the United States Army in 2005 when he was seventeen (17) years old. As previously discussed, he served in the Special Forces and in combat. His physical and mental health was damaged for life serving his country. Because of this incident, the United States Army had no choice but to initiate administrative discharge

proceedings. Cory will lose his military pension that he earned and will continue to earn with his service related injuries for the rest of his life. While it is difficult to quantify the exact value of Cory's military pension, it would have likely been worth $250,000.00 or more over the course of Cory's life. Words simply cannot express the devastating effect of losing everything over a split second reaction in the midst of what was essentially a war zone in the middle of our community. Given Cory's life-long commitment to serving his country and his community, this has been a horrific and humbling experience.

A felony conviction with a three (3) year probated sentence with a special condition of one (1) year of home detention satisfies the deterrence criteria. Cory is specifically deterred. He will never be able to work in law enforcement again because a federal felony conviction is never expungable. Should riots again consume Louisville or American troops be sent to fight overseas again, Cory will not be standing the post. Cory's offense cannot be repeated.

Additionally, Cory took responsibility for his actions and pled guilty by way of an Information. Cory recognized that he should not have struck M.C. He took responsibility for his split second decision knowing he would lose his career in law enforcement, lose his career in the military, lose his pensions and potentially lose his freedom. He does not need a prison sentence to be further punished.

General deterrence is also satisfied by our requested sentence. Anyone who is aware of what has happened to Cory, specifically including the collateral consequences of losing his career in law enforcement, his military career and his pensions, would certainly be deterred from engaging in similar conduct.

Moreover, anyone who examined this situation would likely be generally deterred from

ever willingly serving in law enforcement in particularly high stress or dangerous situations. The United States District Court for the Western District of Kentucky created a veterans treatment court in 2016 recognizing that veterans often face mental health challenges resulting from their service. Veterans treatment court participants undergo an 18-month treatment programs for mental and medical issues attributed to military service. If successful, federal prosecutors may reduce or dismiss charges. Cory requested to participate in the veterans treatment program. The United States Department of Justice's Civil Rights Division objected and, thereby, prevented Cory from participating in the program and obtaining leniency through a program designed to help people with service related mental and physical health problems. It is hard to envision a situation and a defendant more appropriate for the veterans treatment but, yet, he was blocked. Unquestionably, Cory was wrong in striking M.C. one time with his baton but the Government's recommendation that Cory serve four (4) years in prison is simply not justice.

The final statutory consideration for the Court to evaluate under "the need for the sentence imposed" factor is how Cory can best receive any necessary training or treatment. Without question, Cory benefits by continuing, without interruption, his current medical and mental health treatment plan.

  D. <u>The Kinds of Sentences Available.</u>

Cory is statutorily eligible for probation.

  E. <u>Need to Pay Restitution</u>

Restitution is requested in the amount of $1,962.85. Cory does not oppose the restitution request.

  F. <u>Conclusion</u>

Three (3) years of probation with a special condition of home detention for one (1) year is sufficient but not greater than necessary to accomplish the goals of sentencing.

WHEREFORE, Cory Evans respectfully urges the Court to sentence him to three (3) years of probation with a special condition of home detention for one (1) year.

Respectfully submitted,

/S/ Brian Butler

Brian Butler
Stites & Harbison
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
(502) 594-1802

CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing Sentencing Memorandum was electronically filed on November 16, 2021 with service to counsel of record.

/S/ Brian Butler

Brian Butler
Attorney at Law